**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

TAYLOR BOALS
ADC #182537                                                                    PLAINTIFF

v.                                    2:23-cv-00244-BSM-JJV

CONNIE HUBBARD, Nurse Practitioner,
Delta Regional Unit, ADC, *et al.*                                    DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller.   Any party may serve and file written objections to this Recommendation.   Objections should be specific and include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation.   Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

## I.    INTRODUCTION

Taylor Boals ("Plaintiff") has filed this *pro se* action alleging that from September 5, 2023 to January 10, 2024, Defendant Nurse Connie Hubbard denied him constitutionally adequate medical care and committed medical malpractice under Arkansas law failing to properly treat his gastrectomy, hypoglycemia, seizures, chest pains, dizzy spells, headaches, low energy, sleepiness, low testosterone, memory loss, numbness, low metabolism, and spots on his brain.   (Doc. 5.)   All other claims and Defendants have been previously dismissed without prejudice.   (Doc. 19.)

Defendant Hubbard has filed a Motion for Summary Judgment arguing Plaintiff's claim

1

against her should be dismissed without prejudice because he failed to properly exhaust his available administrative remedies.   (Docs. 12-14.)   Plaintiff has filed a Motion for a Trial Date, which includes a response to the summary judgment Motion, as well as several grievances that have been docketed as "Evidence."   (Docs. 16-17.)   After careful review and consideration, I recommend Defendant's Motion for Summary Judgment be GRANTED, Plaintiff's claim against Defendant Hubbard be DISMISSED without prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.   *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).   The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.   *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial.   *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011).   In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party."   *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.    ANALYSIS

### A.    The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court.   *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).   Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."   *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.   *Id.*

### B.   ADC's Grievance Policy

The ADC policy in effect at the time of the alleged constitutional violation was Administrative Directive 19-34, which establishes a three-step procedure.   (Doc. 14-1, 14-2.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident.   The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form."   (Doc. 14-2 at § IV(E)(2).)   Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit

or claim dismissed by the court or commission for failure to exhaust against all parties."    (*Id*. §
IV(C)(4).)    The problem solver must respond to the informal resolution within three working
days.    (*Id*. § IV(E)(4) and (7).)

Second, if informal resolution is unsuccessful or the problem solver does not timely
respond, the inmate must file a formal grievance within three working days by completing a section
on the informal resolution form.    (*Id*. § IV(E)(11) and (F)(1).)    At this point, the form receives
a grievance tracking number.    (*Id.* at § IV(F)(3).)    The Health Services Administrator ("HSA")
must provide a written response within twenty working days.    (*Id*. § IV(F)(5) and (7).)

Third, an inmate who is dissatisfied with the grievance response, or who does not timely
receive a response, must appeal within five working days to the appropriate ADC Deputy Director.
(*Id*. § IV(F)(9) and (G)(6).)    And that response ends the grievance process.    (*Id*.)

### C.    Plaintiff's Grievances

The Medical Grievance Supervisor says in her sworn Declaration Plaintiff submitted only
two medical grievances (DR-23-764 and DR-23-71) between September 2023, which is the first
date of care mentioned in the Amended Complaint, and January 22, 2024, which is when Plaintiff
filed this lawsuit.  (Doc. 14-1.)    Defendant Hubbard argues these grievances are improperly
exhausted because Plaintiff did not appeal them to the ADC Deputy Director before he filed this
lawsuit on December 20, 2023.    (Doc. 14.)    But Defendant Hubbard has not provided copies of
either grievance, a print-out of Plaintiff's grievance history, or any other documents to support the
Grievance Supervisor's assertion. In contrast, Plaintiff has filed four grievances in the record,
which I will discuss separately.    (Doc. 17.)

On September 28, 2023, Plaintiff filed an informal resolution alleging an unnamed nurse
and "provider" were failing to properly treat his seizure disorder.    (Doc. 17 at 8.) And on

November 5, 2023, he filed an informal resolution saying Nurse Monica Adams and an unnamed doctor were not giving him adequate medication for headaches.  (*Id*. at 5.)   Plaintiff did not name Defendant Hubbard, as he was clearly required to do by the ADC's exhaustion policy, in either informal resolution.  *See Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (ADC prisoner did not properly exhaust his claim against two of the three officers omitted from a grievance); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when the "ADC was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit).   Both informal resolutions were denied by the problem solver, and Plaintiff signed the section of the forms indicating he was proceeding to the grievance stage.  (Doc. 17 at 5, 8.) But there are no grievance numbers, date stamps, or acknowledgment forms indicating the HSA received these two grievances.   And it is clear Admin. Dir. 19-34 § IV(F)(9) allows prisoners to proceed to the third and final step of the process without a response from the HSA.   (Doc. 14-2 at 11).   Because there is no evidence Plaintiff fully exhausted these two informal resolutions that did not specifically name Defendant Hubbard, I conclude they cannot be considered exhausted.

On November 26, 2023, Plaintiff filed grievance DR-23-764 saying an unnamed prison "doctor" was failing to provide him with proper care for several of the medical conditions mentioned in this lawsuit.  (Doc. 17 at 9.)   He did not specifically mention Defendant Hubbard as he was required to do by the ADC's exhaustion policy.   *See Townsend,* 898 F.3d at 784; *Burns,* 752 F.3d at 1141.   Plaintiff later received an Acknowledgment saying the HSA would respond to this grievance by December 29, 2023, which was <u>after</u> he filed this lawsuit on December 20, 2023. (*Id*. at 7.)   It is unclear if the HSA did so or if Plaintiff proceeded to the final step of the ADC's grievance process with or without the HSA's response.   Nevertheless, Defendant Hubbard is correct that this grievance cannot be considered because the PLRA requires an inmate to <u>complete</u>

5

the exhaustion process <u>before</u> filing a lawsuit in federal court.   42 U.S.C. § 1997e(a).   Dismissal is mandatory if "exhaustion was not completed at the time of filing."   *Id.; see also Booth v. Churner*, 532 U.S. 731, 734 (2001) (the PLRA requires prisoners to complete exhaustion "before suing over prison conditions"); *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005) (unpublished opinion) (affirming dismissal when exhaustion was not complete "at the time of filing").   The fact that Plaintiff later amended his complaint (Doc. 5) does not help him because it is the date he commenced the lawsuit, and not when he subsequently amended his allegations, that controls.   *See, e.g., Tyler v. Kelley*, No. 5:17-cv-00239-JLH-JTK, 2018 WL 1528784, at *3 (E.D. Ark. Mar. 2, 2018); *Kelley v. Davis*, No. 2:22-cv-0034-DPM-ERE, 2022 WL 18359331, at n. 8 (E.D. Ark. Aug. 18, 2022); *Abdulaziz/Askew v. Maples*, No. 1:12-cv-102-DPM-JTK, 2013 WL 6579151, at *5 (E.D. Ark. Dec. 13, 2013).   And I note Admin. Dir. 19-34 § IV(N) reminds prisoners they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit."   (Doc.14-2 at 19.)   Because it is undisputed Plaintiff did not complete the exhaustion process for grievance DR-23-764 before commencing this lawsuit and he did not specifically name Defendant Hubbard in that grievance, I conclude it cannot be considered exhausted.

Finally, on December 3, 2023, Plaintiff filed grievance DR-23-771 alleging Defendant Hubbard was not providing him with adequate medical care for seizures and chest pains.[1]   (Doc. 17 at 1.)   Soon thereafter, Plaintiff received an acknowledgment form saying the HSA would respond by January 4, 2024.   (*Id*. at 2.)   As with the previously discussed grievance, there is no indication in the record that Plaintiff appealed grievance DR-23-771 through the third step before

---

[1] It is unclear if grievance DR-23-71, which is mentioned in Defendant's Motion and supporting Declaration, is actually DR-23-771.

he commenced this lawsuit seventeen days later on December 20, 2023.   Thus, this grievance also did not properly exhaust Plaintiff's claims.

That, however, is not the end of the analysis because the PLRA only requires prisoners to exhaust their "available" administrative remedies.   42 U.S.C. § 1997e(a).   The United States Supreme Court has broadly construed administrative remedies to be "available" if they are "capable of use for the accomplishment of a purpose."   *Ross v. Blake,* 578 U.S. 632, 642 (2016). Stated conversely, administrative remedies are "unavailable" if: (1) the grievance procedure "operates a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of use;" or (2) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   *Ross*, 578 U.S.at 643-44; *see also Townsend*, 898 F.3d at 783.   In his Motion for Trial Date, Plaintiff says he did not complete all three steps of the grievance procedure "because Ms. Connie Hubbard did not answer them."   (Doc. 16 at 1.) But, as previously mentioned, the ADC's grievance procedure allows and requires prisoners to proceed to the next step when they do not timely receive a response.   Accordingly, I conclude Defendant Hubbard is entitled to summary judgment because Plaintiff failed to properly exhaust his available administrative remedies before commencing this lawsuit.   *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

That being said, I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court.   To the contrary, the Eighth Circuit has explained the critical role the exhaustion requirement plays in the remedy process as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.    The Defendant Hubbard's Motion for Summary Judgment (Doc. 12) be GRANTED, all claims against her be DISMISSED without prejudice, and this case be CLOSED.

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 22nd day of February 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE